DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LINA PENG (NYBN 5150032)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    FAX: (415) 436-7234
    Email: Lina.Peng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19CR00511 WHO |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: August 13, 2020 |
| JOSEPH HOLMES, | Time: 1:30 p.m. |
| Defendant. | Hon. William H. Orrick III |

Mr. Holmes was found with a cache of weapons to include assault rifles, a grenade launcher, over 20 high capacity magazines, over 1000 rounds of ammunition, battle dress uniform with loaded magazines, among numerous other weapons-related items. He amassed these weapons in secret, without his wife and children's knowledge. Mr. Holmes has no criminal history, has multiple sclerosis and suffers from anxiety and depression. The United States requests that, after considering all the factors outlined in Section 3553(a)(2), that the Court impose a sentence sufficient, but not greater than necessary, to meet the purposes set forth in the statute.

# BACKGROUND

**I.  Offense Conduct**

Mr. Holmes was identified by law enforcement because he ordered multiple Glock switches from China that can be used to convert semi-automatic weapons into fully automatic machineguns. (PSR ¶ 6.) A search warrant was served on his home in June 2019 and the following items were located (*see* PSR ¶¶ 9-11):

- Four fully automatic Glock conversion kits;

- One Maverick Arms 12-gauge shotgun;

- One Glock 9 mm semi-automatic pistol inserted into a black polymer CAA brand Micro Roni pistol carbine conversion kit with folding stock;

- One Smith & Wesson MP-15 rifle with black Havoc brand grenade launcher affixed to the firearm underneath the barrel, adjustable telescoping stock, pistol grip, and a bird-cage style flash suppressor;

- One Palmetto State Armory, Turkeyday, 5.56x45 mm caliber firearm with pistol grip, flash suppressor, adjustable telescoping stock;

- One Sig Sauer SIGM400 AR-15 rifle with a flash suppressor and device to allow detachable magazine, and a third setting apparently for automatic firing rendering the firearm a machinegun;

- One Black AR-15 style rifle, lower receiver stamped Palmetto State Armory, with adjustable telescoping stock, pistol grip, magazine release, forward pistol grip, and a silencer;

- One Nylon handcuff holder; one set of stainless handcuffs; multiple fixed blade knifes in belt sheaths;

- Twenty-three fully loaded high capacity magazines;

- Approximately 1,200 rounds of 5.56, .223, 12 gauge, and 9 mm ammunition;

- Black battle dress uniform and cargo pockets and vests containing loaded magazines.



When interviewed by law enforcement in June 2020, Mr. Holmes stated that he was a "prepper" and wanted to be prepared for any disaster, government shutdown, or collapse of society. (PSR ¶ 12.) Mr. Holmes has told Probation that he no longer considers himself a "prepper," but that he wanted to be "prepared to take care of his family." (PSR ¶ 17.) He claims that he is not a shooter, and that he began collecting firearms and other items in 2016.[1] (*Id.*)

In 2015, Foster City police was dispatched to conduct a welfare check on Mr. Holmes. A colleague of Mr. Holmes' wife reported that his wife was unsure of Mr. Holmes' mental condition due to the fact he suffered from a health condition, and that she had recently left their residence with her children due to Mr. Holmes' possession of firearms in their home. (PSR ¶ 12; Peng Decl. Ex A (Foster City police report)). Mrs. Holmes at no point was aware of the firearms in their residence. (Peng Decl. Ex. A.) Mrs. Holmes told police that he had not made any statements regarding wanting to hurt anyone, but she wanted to confirm his state of mind, and that there were no additional firearms in the home. (*Id.*) Mr. Holmes surrendered two firearms (one shotgun and Glock 9 mm), two open boxes of unused 9

---

[1] The accuracy of Mr. Holmes' statement that he began collecting in 2016 is questionable based on the firearms and related items surrendered to Foster City police in 2015.

mm rounds, five 9 mm magazines, six shotgun shells, five empty Glock magazines, a double-sided knife, and a handle grip. (*Id.*) The Foster City police concluded that Mr. Holmes was not a danger to himself or others. (*Id.*)

## II. Procedural Posture.

Mr. Holmes was arrested by the state authorities on July 26, 2019, and detained. He was transferred to federal custody on October 15, 2019, and ordered released on October 17, 2019 on a $100,000 unsecured bond.

On October 8, 2019, Mr. Holmes was indicted with one count of possession of machineguns, in violation of Title 18, United States Code, Section 922(o), and one count of possession of unregistered silences, in violation of Title 26, United States Code, Section 5861(d).

On January 16, 2020, Mr. Holmes pleaded guilty to Count One of the Indictment, pursuant to a plea agreement.

## DISCUSSION

## I. The Defendant's Sentencing Guidelines Calculation.

As set forth in the PSR and the plea agreement, the Sentencing Guidelines calculation for the defendant's offense level on Count One is as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level (U.S.S.G. § 2K2.1) | | 18 |
| b. | Specific offense characteristics (U.S.S.G. § 2K2.1(b)(1)(A)):<br>(3-7 firearms) | | + 2 |
| d. | Adjusted Offense Level: | | 20 |
| c. | Acceptance of Responsibility (U.S.S.G. § 2L2.2(a)): | | - 3 |
| f. | <u>Total Offense Level</u>: | | 17 |

At Criminal History Category I, Mr. Holmes' Guidelines range is accordingly 24 to 36 months of imprisonment. Probation has recommended a downward variance to time served with 3 years of supervised release.

## II. Section 3553(a) Factors

Section 3553(a) directs courts to consider a number of factors in determining an appropriate

sentence. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). In this case, the government respectfully suggests that the key factors for the Court to consider are the nature and circumstances of the offense, the defendant's history and characteristics, and the need to provide adequate deterrence and protection of the public.

**A.   Nature and Circumstances of the Offense**

The nature and circumstances of the offense here is serious. Mr. Holmes possessed illegal machineguns. A fully automatic Glock conversion switch is a device that can be inserted onto a Glock-style firearm in order to convert a semi-automatic firearm into a fully automatic one. Under the law, such a device is defined as a machinegun because it converts a weapon into a machinegun. 18 U.S.C. §§ 922(o); 921(a). Mr. Holmes possessed four Glock switch devices, and knew that they could be used to convert a semi-automatic Glock-style firearm into a fully automatic one and attempted to install one of the switches onto a Glock firearm he possessed. (Plea Agreement ¶ 2.)

Mr. Holmes' possession of the Glock switches in conjunction with the quantity and types of other weapons he had amassed raises obvious concerns regarding the safety of the community.[2] It should be noted that although Mr. Holmes was charged federally with possession of machineguns and unregistered silencers, the other assault rifles that he possessed were illegal under California law as assault weapons under California Penal Code § 30515(a)(1). One of the five firearms Mr. Holmes possessed (the shotgun) was legally registered to him and not seized.

Even crediting Mr. Holmes' claims that he is "not a shooter" (PSR ¶ 17), the independent harm created by the crime of illegal weapons possession cannot be brushed aside. Congress outlawed the possession of certain types of weapons because of the inherent danger posed by their proliferation in community, including the machineguns Mr. Holmes ordered off the Internet. Put differently, Mr. Holmes is not just a harmless gun collector because what he collected were illegal firearms that are

---

[2] This case garnered news attention. *See* The San Mateo Daily Journal, Aug. 10, 2019, "Foster City man charged with 18 firearm felonies," https://www.smdailyjournal.com/news/local/foster-city-man-charged-with-18-firearm-felonies/article_4abb433c-bb24-11e9-9730-871c4a160796.html; SF Chronicle, June 25, 2019, "Assault rifles, grenade launcher seized in Foster City man's arrest," https://www.sfchronicle.com/crime/article/Assault-rifles-grenade-launcher-seized-in-Foster-14044722.php; The Mercury News, June 25, 2019, "Peninsula man arrested, grenade launcher seized," https://www.mercurynews.com/2019/06/25/peninsula-man-arrested-grenade-launcher-seized/

highly dangerous. He knew how to own firearms legally and could have owned them legally, but chose not to do so.

### B. The Defendant's History and Characteristics

Mr. Holmes has no criminal history and maintains employment as an engineer, and has a wife and two young children. He also suffers from multiple sclerosis. According to Dr. Shahram Amina, due to the immune-modulating medication Mr. Holmes is taking, he is considered to be at high risk of getting COVID-19 and "perhaps getting a more severe form of the disease." (PSR ¶¶ 49-50.) Mr. Holmes also reportedly has a history of depression and anxiety. (*Id.* ¶ 51.) These are factors that the Court should take into consideration when fashioning the appropriate sentence.

There are other aspects to Mr. Holmes' history and characteristics that the Court should also consider. Mr. Holmes has had prior concerning conduct with respect to firearms. As noted above, in 2015, at the request of Mr. Holmes' wife, a wellness check was performed by the Foster City police and two firearms along with multiple items of firearms paraphernalia was turned in. Mr. Holmes' wife did not know her husband had the weapons in their home. Subsequent to that incident, in just a few years, Mr. Holmes amassed even more weapons and weapons paraphernalia unbeknownst to his wife.

### C. Adequate Deterrence; Protection of the Public; Unwarranted Sentencing Disparities

Thousands of Glock switches like the ones Mr. Holmes possessed have been smuggled into the United States, in many instances into the hands of felons and other high-risk individuals.[3] The risk posed by these illegal parts in the hands of individuals who can easily order them off the Internet and then build deadly weapons cannot be understated and warrants deterrence. Defendants have received significant custodial terms for possessing such devices. *See, e.g., United States v. Walsh*, 19 Cr. 232 WHA (N.D. Cal. 2019) (18 months sentence for possession of Glock switches, plus 3 years of supervised release); *United States v. Larios*, 19 Cr. 179 RS (77 months sentence at low end of Guidelines range for possession of Glock switches, and other firearms).

---

[3] *See, e.g.*, CNN, *ATF on the hunt for thousands of illegal machine gun conversion devices smuggled into US* (May 23, 2019), available at https://www.cnn.com/2019/05/23/us/atf-agents-hunting-down-illegal-machine-gun-device-invs/index.html.

UNITED STATES' SENTENCING MEM.     6
CR 19-00511-WHO

## CONCLUSION

The United States requests that, after considering all the factors outlined in Section 3553(a)(2), that the Court impose a sentence sufficient, but not greater than necessary, to meet the purposes set forth in the statute. The United States also recommends that a fine within the Guidelines range should be imposed.

DATED: August 6, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
LINA PENG
Assistant United States Attorney